IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PAUL THOMAS ROBINSON, ET AL.                                              PLAINTIFFS

vs.                                    CASE NO. **4:03CV00415GH**

FORD MOTOR COMPANY                                                         DEFENDANT

**ORDER**

On February 23, 2007, the Court held a hearing on the motions for enforcement of the settlement agreement.

On July 10, 2001, Charles Robinson lost control of the Ford Expedition he was driving. The vehicle overturned and rolled several times. Mr. Robinson was rendered a quadriplegic and survived for about nine months before dying from injuries sustained in the accident. His wife, Gail D. Robinson, died at the scene. The Robinsons were survived by two minor children, who were passengers in the Expedition.

Prior to dying, Charles Robinson retained John Patterson to represent him, the estate of his deceased wife and the minor children. Patterson testified that he had a contingency fee agreement with the family. The terms of the retainer agreement are unclear as no agreement was entered into evidence. Patterson associated Tab Turner, an attorney who has experience in products liability cases against Ford Motor Company (FMC), to work on the case. The terms of Turner's agreement with both Patterson and the plaintiffs are unclear as no agreement between either Turner and Patterson or Turner and the plaintiffs was entered into evidence. Plaintiffs do not dispute, however, that both Turner and Patterson represented them. Turner, however, stated that Patterson dealt directly with the plaintiffs; Turner did not have contact with them.

On June 4, 2003, plaintiffs filed this action, alleging that a defect with the Robinson's Expedition was the proximate cause of the accident and resulting injuries.

-1-

The complaint was brought by Paul Thomas Robinson, John Michael Robinson, Paul Robinson and Margaret Robinson as co-administrators of the Estate of Charles E. Robinson who had by that time died; Theresa Jones as administratrix of the Estate of Gail D. Robinson; John Michael Robinson and Sandra Robinson, co-guardians of the person and estates of Charles Matthew Robinson and Cassandra Renee Robinson, Minors. Turner signed the complaint; Patterson is also listed as counsel.

At the hearing, Turner testified that because of the number of cases he has against FMC FMC has designated a representative, Jonas Saunders, to negotiate with him. Around February 27, 2006, Saunders and Turner reached an agreement to settle the case for $800,000.00. The terms of the settlement included an agreement by Entergy to reduce its $1.2 million lien to $100,000.00. Turner conveyed this information to Patterson, who contacted the plaintiffs. The plaintiffs wanted to meet with Turner about the settlement offer and a meeting was held on February 28, 2006 with the family members. At the meeting were Turner, Patterson, Teresa Jones, Margaret Robinson, John Michael Robinson, Sandra Robinson and Paul Thomas Robinson. Wilbur Robinson testified that he was also present although he is not a party to the action. Thus, two of the three co-administrators for the estate of Charles Robinson, the administrator for the estate of Gail Robinson, and the two guardians of the minor children were present. What transpired at the meeting forms the basis of this dispute. Turner and Patterson testified that they relayed the $800,000.00 offer to the plaintiffs. The plaintiffs indicated that they wanted to get more money. They agreed that Turner should try to get $1.2 million. Turner and Patterson stated that the five of the six plaintiffs agreed to the $1.2 million. Turner and Patterson stated that they discussed what would happen if FMC did not accept the $1.2 million offer. Turner and Patterson stated that the people present voted 5-1 to accept the $800,000.00. They testified that based on the vote, they had clear, express authority to settle the case for $800,000.00.

Teresa Jones, Margaret Robinson, John Michael Robinson, Wilbur Robinson, and Paul Thomas Robinson all testified about the February 28th meeting.  They all contended that there was only one vote - to make a counteroffer of $1.2 million.   Robinson was the only one not to vote in favor of the counteroffer.  He stated that he had told Patterson the night before that the amount offered was not enough.   He was willing to take his chances and "go to court."  The plaintiffs and Wilbur Robinson all testified that there was never a vote about the $800,000.00.

Turner left the room to contact Saunders about the counteroffer.  Turner could not reach Saunders.   The plaintiffs and Wilbur testified that they were told to go home and that Turner or Patterson would get back to them about the results of the counteroffer. Neither Turner nor Patterson ever contacted plaintiffs after FMC rejected the $1.2 million offer and Turner accepted the $800,000.00.

Sometime in May, 2006, Patricia Young, also a family member, contacted Patterson about the case.  Soon thereafter, a final settlement sheet was prepared and provided to the plaintiffs.  Upon receipt of the distribution sheet, a number of  plaintiffs voiced their objection to the settlement and stated that they had not agreed to the $800,000.00.  Another meeting was held in June 3, 2006 at which the plaintiffs would not agree to the settlement.

A settlement agreement is enforceable if the attorney has express authority to enter into it. [1]  *Harris v. Arkansas State Highway and Transp. Dep't.*  437 F. 3d 749, 751

---

[1] There appears to be some ambiguity regarding the proper standard.  In *Harris,* the Eighth Circuit stated that " a settlement agreement is enforceable if the attorney possessed "actual, implied, or apparent" authority to enter into it, *Surety Ins. Co. v. Williams*, 729 F.2d 581, 583 (8th Cir.1984), and more recently that an attorney must have been given "express" authority to enter into it, *Turner v. Burlington N. R.R. Co.*, 771 F.2d 341, 345 (8th Cir.1985)." 437 F. 3d at 751 .    It then went on to resolve the case using the "express authority" standard, noting it was the more stringent one.  Subsequent district court decisions relying on *Harris*, have used the "express authority" standard.  *See Software Unlimited, Inc. v. Syben Holdings, Inc.*, 2006 WL 3230782 (D. S. D. 2006), *Malkovich v. Best Buy Enterprises, Inc.*, 2001 WL

(8th Cir. 2006). "Express authority "can be created by written or spoken words or the conduct of the principal which, reasonably interpreted, causes an agent to believe that the principal desires him [or her] to act in a particular manner on the principal's account."" *Id.* (quoting *Turner v. Burlington N. R. R. Co.,* 771 F. 2d 341, 345 (8th Cir. 1985).

The Court has tried to resolve the disputed facts.  The authority Turner and Patterson had is somewhat ambiguous.  According to plaintiffs, counsel did not have authority to settle for $800,000.00.  They had authority to make a counter-offer of $1.2 million.  According to some of the plaintiffs, if FMC accepted the $1.2 million plaintiffs would meet again to discuss whether to accept it.  Thus, at least from some of the plaintiffs' standpoint, their attorneys had no authority to accept any offer without further discussion.

Everyone appears to agree that there was some discussion regarding what would be done if FMC did not accept the $1.2 million.  Viewing the evidence in the light most favorable to plaintiffs, the answer would be that Turner and/or Patterson were supposed to get back to them regarding FMC's action.  Neither did, although Turner testified that Patterson told him that he had let the plaintiffs know that the $800,000.00 offer had been accepted.  Patterson, however, did not corroborate that.

Viewing the evidence in the light most favorable to Turner and Patterson, both testified as to the votes taken.  Arguably,  there should have been some decision made at that meeting as to what to do if FMC did not accept the $1.2 million offer.  Furthermore, that plaintiffs did not attempt to contact Patterson sooner to find out the results of the counter-offer weighs in favor of counsel's version.

The Court finds that the authority Turner and Patterson had was ambiguous at best.   With six plaintiffs and an additional family member present without having had much time to consider the offer, counsel should have ensured that any ambiguities were

---

1579861 (D. Minn 2006).

resolved so that they had clear direction as to how to proceed.

In reaching this decision, the Court has considered the conflicting testimony regarding the contacting of the plaintiffs as well as Turner's testimony regarding contacting Saunders. Turner stated that he e-mailed Saunders while the plaintiffs were present. He later testified that he did not e-mail Saunders until after the plaintiffs had left.

The Court is persuaded that Turner and Patterson did not have express authority to settle the case for $800,000.00. Thus, the motions to enforce settlement are denied.

Accordingly, the motion to dismiss the motion to enforce is denied; the motions to enforce the settlement are denied. The Clerk is directed to issue a scheduling order setting the case for jury trial.

IT IS SO ORDERED this 27th day of February, 2007.

/s/ George Howard Jr.
UNITED STATES DISTRICT JUDGE